UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:12-CV-00643-H

LIONEL SEMIEN                                                                                    PLAINTIFF

V.

PACKAGING UNLIMITED, LLC                                          DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This dispute arises from Plaintiff Lionel Semien's termination from his temporary assignment with Defendant, Packaging Unlimited. Semien claims that Defendant violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, by terminating his employment in retaliation for his participation in a protected activity, the investigation of a sexual harassment claim. Also in connection with his termination, Semien claims that Defendant violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et. seq.*, by discriminating against him based on his disability, an amputated leg.

Defendant has moved for summary judgment on both, arguing that Semien has not produced sufficient evidence to prove the elements of either claim. After a full analysis and based on numerous factors, the Court agrees and concludes that Defendant states a legitimate reason for Semien's termination, which reason cannot be shown to be a pretext.

I.

A staffing agency, Delta Direct Staffing ("Delta"), placed Semien with Defendant, where he worked between October 18, 2011 and January 6, 2012 as a Production Supervisor. His direct

supervisor was Shannon Rone, the Plant Manager. Semien was a temporary employee with no guarantee of a permanent position.

No one disputes that Semien adequately performed his tasks as a Production Supervisor. After his placement with Defendant, one of its managers told a Delta employee that Semien was doing well. The manager reported no issues regarding Semien's performance to Delta. Semien does have an amputated leg, though he requested no special accommodations due to it. Semien claims that Rone and Plant Manager Kelly Papp were aware of it because he walks with a limp. Semien further alleges that he told Rone that he could not move as fast due to his amputated leg after Rone noticed Semien had trouble keeping pace with him on one occasion. Semien also claims to have told Papp that he was walking slowly on one occasion due to a farming incident. Both Rone and Papp dispute that Semien walks with a limp and that they had knowledge of his disability.

Semien claims that in or around early December 2011, his co-worker, Yolanda Dukes, told him that her supervisor, Willie Chill, had sexually harassed her. According to Semien, he reported this allegation to Papp and on a later occasion confirmed it with Papp. Semien further claims that soon afterwards, Chill stopped speaking to him and refused to give him work orders. Semien alleges that Chill and Rone are personal friends; he extrapolates that Chill discovered his involvement in confirming the sexual harassment investigation and told Rone.

Dukes, Rone and Papp each deny Semien's story. There is no direct evidence that Rone was aware that Semien reported any sexual harassment claims. Dukes denies making any sexual harassment claim or discussing one with Semien. Papp denies that any sexual harassment investigation took place. No documentary evidence supports the existence of either a claim or an investigation. It is true that a month earlier, Papp did question Dukes, Chill, and Semien after

Dukes complained because Chill had reassigned her and two others from Line Leader positions to work on the production line.

In January 2012, Shannon Rone terminated Semien's assignment and chose not to offer him permanent employment. Semien claims that Rone stated that he did not need him anymore and that the environment "was not good for someone with [Semien's] condition." Semien was the only Delta-referred individual terminated on January 6, 2012. He claims that he was replaced by Donald Cameron on January 10, 2012. Cameron was also sent from Delta. Defendant hired Cameron as a permanent Production Supervisor in April 27, 2012.

Defendant says that, as a temporary supervisor, Semien had no guarantee of full time employment and that the company often hires employees temporarily in response to production demand. Depending on the season, staffing needs vary from 50 to 750 people. After his termination, Semien filed an Equal Employment Opportunity Commission ("EEOC") claim. In response, Shannon Rone sent an email to Kelly Papp which described the reasons why he ended Semien's assignment. The email states:

> Lionel Semien worked for us as a Temporary Supervisor from Delta Staffing during the latter part of 2011 and early 2012 (I do not know the exact dates).
>
> He trained with several of our lead people and other supervisors in both Reynolds and Unilever.
>
> While he was certainly pleasant enough to work with and had a very good rapport with the employees, I found him to be simply too passive in terms of the production. He seemed too content to let the leads handle everything and did very little to actually lead. This was the case when working in either Department.
>
> While this might be somewhat normal during a brief learning phase, this did not change even on jobs that he was familiar with and had done before.
>
> For these reasons, his assignment was ended at Packaging Unlimited.

This lawsuit followed the denial of Semien's EEOC claim.

II.

A party is entitled to summary judgment where there is no genuine dispute of material fact. Fed. R Civ. P. 56(a). The moving party must "demonstrate [this] absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Following this showing, the non-moving party must bring forward specific facts supported by the evidence that "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251−52 (1986).

In reviewing a motion for summary judgment, a court must view the evidence in a light most favorable to the non-movant as well as draw all reasonable inferences in the non-movant's favor. *See Bender v. Southland Corp.*, 749 F.2d 1205, 1210−11 (6th Cir. 1984). Evaluating credibility, weighing evidence, and drawing factual inferences are all functions for a jury at trial. *See Anderson*, 477 U.S. at 255.

III.

The Court looks first to Semien's Title VII retaliatory termination claim. To establish a prima facie case using circumstantial evidence, Semien must prove that "(1) he engaged in activity protected by Title VII; 2) [his] exercise of [that protected activity] was known by the defendant; 3) that, thereafter, the defendant took an employment action adverse to [him]; and 4) that there was a causal connection between the protected activity and [his termination]." *Equal Emp't Opportunity Comm'n v. Avery Dennison Corp.*, 104 F.3d 858, 860 (6th Cir. 1997) (citing *Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir. 1987)).

Under the *McDonnell Douglas* burden shifting scheme that governs Title VII retaliation cases, *see Avery Dennison Corp.*, 104 F.3d at 863, the burden shifts to the defendant to provide a legitimate reason for the employee's termination once the plaintiff has established a prima facie case, *see Williams v. Nashville Network*, 132 F.3d 1123, 1131 (6th Cir. 1997). If the defendant does so, the plaintiff must produce evidence that would allow a reasonable jury to conclude that the proposed explanation is a pretext for retaliation. *See id*. The Court proceeds under this framework.

Semien's termination qualifies as an adverse employment decision, satisfying the third element of a prima facie case. Moreover, assuming that he could establish a protected activity, Semien can probably establish a reasonable inference of causation based solely upon the temporal proximity between this protected activity and his termination. *See Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008). However, the evidence supporting the other two necessary elements is thin. Indeed, the Court finds that Semien cannot establish either of them. The Court will analyze each in turn.

A.

Title VII protects two kinds of activity: (1) employee opposition to Title VII violations ("opposition clause") and (2) employee participation in Title VII actions or investigations ("participation clause"). *See* 42 U.S.C. 2000e-3(a). In *Abbott v. Crown Motor Co., Inc.*, the Sixth Circuit found that employees participating in an internal investigation are protected where that investigation is connected to a pending EEOC charge. 348 F.3d 537, 543 (6th Cir. 2003). Although the Supreme Court has not definitely ruled on this matter, *see Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 280 (2009), the Sixth Circuit has limited protected activity under the participation clause to the internal investigations pursuant to

a pending EEOC charge, *see Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 211 Fed. Appx. 373, 376 (6th Cir. 2006), overruled on other grounds by *Crawford*, 555 U.S. 271. Here, no EEOC charge was pending at the time Semien allegedly participated in an investigation.

Next, the Court considers Semien's retaliation claim under the opposition clause. That clause covers an employee's complaints to management regarding allegedly unlawful conduct, regardless of whether that employee initiated the conversation or responded to an employer's questions during a subsequent investigation. *See Crawford*, 555 U.S. at 276. The employee must have held a "reasonable and good faith belief that the opposed practices were unlawful." *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000). Thus, taking Semien's statements as true, his reporting the sexual harassment allegations to Papp would constitute a protected activity under the opposition clause.

However, that this investigation occurred at all is highly speculative. Dukes, the alleged victim of sexual harassment, denies that Chill sexually harassed her or that she ever told anyone that Chill did so. Papp agrees that she did question Semien about an entirely separate matter involving Dukes earlier in November. She denies, however, that the conversation had anything to do with sexual harassment or that Semien reported any sexual harassment issues to her. Semien provides no other evidence supporting his claim. No record exists of either Dukes's or Semien's alleged report to Papp.

Denials by Dukes, Papp and Rone make Semien's account virtually unbelievable. In these circumstances, certainly no reasonable jury would believe Semien where even the supposed object of harassment denies that it occurred. Though the Court finds that Semien cannot establish that he engaged in protected activity under the opposition clause, the Court will analyze the next element.

B.

For the second element, Semien must show that Defendant's decision maker, Rone, knew of Semien's protected activity. *See Mulhall v. Ashcroft*, 287 F.3d 543, 554 (6th Cir. 2002); *see also Brown v. VHS of Michigan, Inc.*, 545 F. Appx 368, 374 (6th Cir. 2013). On this point Semien relies upon even greater speculation which the Court ultimately finds insufficient.

Here, Semien's claim relies on his assertions that Chill treated him differently following the investigation; that Chill and Rone are personal friends; and that Chill must have, therefore, told Rone of Semien's supposed assistance or knowledge. Semien points to Rone's email to Papp as possible evidence of Rone's knowledge. However, the email provides no indication that Rone knew of Semien's participation in any sort of protected activity.

In sum, to find that Rone was aware of Semien's participation requires drawing the inferences that Chill knew about Semien's participation based on Semien's allegation that Chill treated him differently and, further, that Chill made Rone aware simply based on Semien's claim that the two are friends. This inferential leap goes well beyond what is reasonable. *See Mulhall*, 287 F.3d at 552 (the plaintiff must provide more than "flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from [personal] experience'" (quoting *Visser v. Packer Eng'g Assocs., Inc.,* 924 F.2d 655, 659 (7th Cir. 1991))).

This Court finds Semien's evidence too speculative to create a permissible inference as to Rone's knowledge. For all these reasons, Semien cannot establish a *prima facie* case on his retaliation claim.

IV.

The Court now considers Semien's discrimination claim under the ADA, which prohibits employers from discriminating against "a qualified individual on the basis of [a] disability." 42

USC 12112(a), *et. seq.* A plaintiff may prove a violation of the ADA using either direct or indirect evidence. *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 452 (6th Cir. 2004). This Court first considers whether Semien has provided direct evidence of discrimination.

A.

Semien's alleged direct evidence of discrimination is Rone's statement when terminating him that the environment was not good for someone "in his condition." Semien believes this statement directly referenced his disability. Direct evidence "proves the existence of a fact without requiring any inferences." *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004).

Taking Semien's declaration to be true, whether it constitutes direct evidence of discrimination is questionable. The alleged statement itself is ambiguous in the circumstances. To conclude that Rone's statement is direct evidence of discriminatory termination does require the inferential step, albeit slight, that "condition" referenced Semien's disability, as opposed to some other factor. Further, another fact (or rather the absence of it) argues that Rone's comment did not concern Semien's disability. There is no evidence that Semien's disability in any way compromised his ability to work or that anyone had ever complained about his physical ability to work. Apparently, Semien never requested any accommodation at work nor did anyone suggest the need for one.

Thus, to find that Rone's comment (even if believed) concerned Semien's disability is without any contextual support whatsoever. This Court concludes that Rone's statement falls short and that Semien has not produced direct evidence of discrimination.

B.

The Court now analyzes Semien's claim using the framework for indirect or circumstantial evidence of discrimination. Not without some confusion, the Sixth Circuit has adopted a five-factor test. A plaintiff relying on indirect evidence must show that: "1) he or she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applications or the disabled individual was replaced." *Whitfield v. Tennessee*, 639 F.3d 253, 258-59 (6th Cir. 2011). The *McDonnell Douglas* burden shifting scheme also governs such a claim. *See Talley v. Family Dollar Stores of Ohio, Inc.,* 542 F.3d. 1099, 1105 (6th Cir. 2008). There is no dispute that Semien can establish the first three factors. The parties do dispute elements four and five.

Factor five is confusing due to the unusual circumstances of Semien's termination or replacement. Semien asserts that he was replaced. Indeed, only four days after Semien's termination, Defendant did hire another temporary employee, Donald Cameron. Cameron also came from Delta, the company that placed Semien with Defendants. Eventually, on April 27, 2013, Defendant hired Cameron as a permanent Production Supervisor. This evidence could be sufficient to support the fifth factor.

The fourth factor presents the closest question. "An employer has notice of the employee's disability when the employee tells the employer that he is disabled." *Hammon v. DHL Airways, Inc.,* 165 F.3d 441, 450 (6th Cir. 1999). Semien claims that both Papp and Rone were aware of his disability prior to his termination. Semien says that Papp asked him about his leg because he was walking slowly and that on another occasion he told Rone that he had an

amputated leg while the two were walking together. Semien further claims that his disability is apparent because he walks with a limp.

Both Rone's and Papp's alleged awareness of the disability rests on Semien's own declaration. That Semien did not request any special workplace accommodations for his condition casts doubt on his claim. Further, assuming that Semien does have a noticeable limp, an individual may limp for a variety of reasons, many of which would not support a disability as defined in the ADA. However, this Court concludes that, based on Semien's own declaration regarding his limp and his alleged conversations with Rone and Papp, he has provided enough evidence that Defendant knew or should have known of his disability. That Rone and Papp deny that Semien had a noticeable limp or awareness of Semien's disability is not fatal.

V.

On Semien's ADA claim, the burden now shifts to Defendant to provide a legitimate explanation for Semien's termination. The Court notes that much of the explanation contained in this Section is also applicable to Semien's Title VII claim, even assuming he could establish a *prima facie* case for that claim.

A.

Defendant says that it terminated Semien's temporary assignment and did not offer him a permanent position because he had performed managerial duties overseeing the production line too passively, as Rone's email explains more completely.

Defendant regularly hires temporary employees to meet an increase in production demand. Its peak season runs between October and December. Rone terminated Semien's assignment in January, shortly after the end of peak season. Defendant's records show that the duration of Semien's assignment at Packaging Unlimited is similar to that of other temporary

employees. Defendant claims that it makes permanent hiring decisions based on the company's needs and the temporary employee's work performance. Based upon this evidence, the Court agrees that selecting permanent employees with more hands-on and more assertive managerial styles are legitimate business reasons explaining Semien's termination. Even though this is a subjective judgment, it is a perfectly legitimate one.

B.

The burden now shifts back to Semien to demonstrate that Defendant's explanation is a mere pretext for discrimination. *See Talley,* 542 F.3d. at 1105. He must provide sufficient evidence for a jury to reasonably reject Defendant's explanation. *See Wright v. Memphis Light, Gas & Water Div.*, 2014 WL 888504, at *5 (6th Cir. 2014); *Johnson*, 319 F.3d at 866. To do so, Semien may demonstrate either "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [the] discharge, or (3) that they were insufficient to motivate discharge." *Hedrick*, 355 F.3d at 460. Semien makes two arguments in rebuttal: (1) Defendant has shifted its explanation for the termination and (2) Defendant's stated reasons are insufficient to motivate the termination. The Court will discuss each.

1.

An employer's shifting explanation for an adverse action can be evidence of pretext. *See Thurman Yellow Freight Sys.*, 90 F.3d 1160, 1167 (6th Cir. 1996). Semien argues that Defendant has changed its reasons causing them to be now suspect. The Court disagrees. Defendant has not changed its reasons which Rone described. In its briefing it has provided more context for it. It has said that the peak season explains the timing of Rone's decision, while Semien's passive management style was the motivating factor.

The Rone email to Papp following Rone's termination explains in context Semien's passive management style. Defendant has always maintained that Rone terminated Semien for the reasons stated. In its motions, Defendant references Semien's passive management style in the context of his status as a temporary employee and the company's shifting seasonal demands. The Court concludes that Defendant's explanation of the timing much more supplements rather than contradicts its original explanation. Those arguments do not constitute a "shifting explanation."

2.

Next Semien attempts to cast doubt on Defendant's proffered explanations. He disputes that seasonal production demands motivated his termination. He claims that Defendant's hiring of another temporary employee four days after his termination and after the end of peak season discredits Defendant's shifting production demands explanation. However, Defendant does not claim that Rone terminated Semien's temporary employment simply because peak season ended. The end of peak season supplements Rone's explanation and clarifies the timing of the decision.

Semien also disputes that his passive management style motivated his termination. Semien notes that another Production Supervisor, Chill, was promoted despite concerns reflected on his performance review that he needed to be more "hands-on." However, Chill's performance evaluation took place in March 2007. Furthermore, Chill was a full time employee. Given these significant differences between Chill's and Semien's positions, these facts do not provide evidence of pretext.

Semien further claims that Rone never discussed any issues regarding his management style with him. Defendant acknowledges that Semien performed his work adequately. However,

for the reasons explained, Defendant did not select him for a permanent position after his temporary assignment. Again, the reasons were subjective but nonetheless valid.

C.

Temporary employees are not guaranteed permanent offers. Defendant hired Semien for a temporary position as it regularly hires temporary employees for similar durations. It has explained legitimate reasons for not retaining him. The Court finds that Semien has not met his burden of showing that this reason is actually a pretext for some kind of discrimination or retaliation. Donald Cameron's hiring as a temporary worker and subsequent retention as a full time employee do not represent evidence to the contrary.

Further, in most disability cases, the plaintiff's claim arises from some employer dissatisfaction with the employee's ability to perform his job. Sometimes the plaintiff has requested an accommodation and sometimes not. Here, both parties agree that Semien could and did perform his duties adequately, and there is no evidence that Semien ever asked for special accommodation. The odd lack of either circumstance provides yet another reason to doubt Semien's ADA claim and augments the implausibility of it.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendants' motion for summary judgment is SUSTAINED and Plaintiffs' claims are DISMISSED WITH PREJUDICE.

This is a final order.

cc: Counsel of Record